# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

<u>State of New Hampshire</u>

      v.                        Civil No. 22-cv-145-LM
                                  Opinion No. 2023 DNH 032 P

<u>3M Company, et al.</u>

# **O R D E R**

In late May 2019, the State of New Hampshire filed this <u>parens patriae</u>[1] suit in state court against 3M Company, E.I. DuPont de Nemours & Company, and The Chemours Company alleging claims for negligence, defective design, failure to warn, trespass, and violating the public trust.[2]  The State alleges that the defendants supplied products containing certain per- and polyfluoroalkyl substances, which are commonly known as PFAS or PFAS compounds, in New Hampshire.[3]  The State asserts that the defendants knew or should have known that PFAS compounds,

---

[1] A <u>parens patriae</u> suit involves "a matter of sovereign or quasi-sovereign interest" and is brought by a state on behalf of all its citizens.  72 Am. Jur. 2d States, Territories, and Dependencies § 94.

[2] After filing its initial complaint, the State filed an amended complaint which added defendants Corteva, Inc., and DuPont de Nemours, Inc., and claims accusing defendants of engaging in what amounts to a fraudulent corporate shell game to avoid or minimize potentially significant liability.  The state court later dismissed the State's trespass and public trust claims, so those claims are no longer at issue in this suit.

[3] For the reader's ease, the court uses "PFAS" and "PFAS compounds" as shorthand to refer to the several different chemical substances at issue in this suit, which include perfluorooctansulfonic acid ("PFOS"); perfluorooctanoic acid ("PFOA"); perfluorononanoic acid ("PFNA"); and perfluorohexanesulfonic acid ("PFHxS"); as well as those compounds' chemical precursors.

when released into the environment, migrate long distances through soil, groundwater, and air, and they do not decompose through natural processes. The State alleges that PFAS contamination has occurred statewide, meaning throughout New Hampshire's natural resources, including the entire state's soil, groundwater, surface water, and wildlife.

On April 29, 2022, three years after the State began this suit, 3M removed it under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). 3M asserts that removal jurisdiction exists under § 1442(a)(1) because some of the contamination at issue in this suit plausibly overlaps with, or has commingled with, PFAS contamination from products known as Aqueous Film-Forming Foams ("AFFF") that 3M supplied to the United States military per a military-created specification ("MilSpec AFFF").

The State moves to remand (doc. no. 12), asserting, among other arguments,[4] that 3M has not met the requirements for removal jurisdiction under § 1442(a)(1) because the State disclaimed in this suit any recovery for PFAS contamination from AFFF products. The State also contends that 3M did not timely remove this suit under 28 U.S.C. § 1446(b), which creates a 30-day clock for removal that begins when the removing defendant can first ascertain a case's removability.

---

[4] The State also contends that sovereign immunity precludes removal jurisdiction and that 3M's asserted federal contractor immunity defense is not colorable. Because the court agrees with the State's arguments under 28 U.S.C. §§ 1442(a)(1) and 1446(b), the court need not address these two additional arguments.

3M objects, arguing that the State's disclaimer is legally ineffective and reiterating its position that some contamination at issue in this suit plausibly overlaps with contamination from AFFF it produced for the United States military. 3M argues that its removal was timely because it only recently learned that this suit involved statewide contamination or that a plausible overlap in contamination exists.

The State's motion to remand is granted for two reasons. First, 3M has failed to show that the requirements for removal jurisdiction under § 1442(a)(1) are met. The State disclaimed in this suit recovery for harm from AFFF contamination, which eliminates any connection between the State's claims in this suit and 3M's production of MilSpec AFFF. Second, 3M's removal was untimely because the State broadly pleaded this statewide contamination suit from the outset, and the State clearly and unambiguously alleged facts from which 3M could have easily determined that some contamination at issue in this suit plausibly overlaps with contamination from AFFF it produced for the United States military. After summarizing the background facts, the court addresses both arguments.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction, and they "possess only that power authorized by Constitution and statute." Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 552 (2005). When a case is first brought in a state court, a defendant has the right to remove the case to federal court if it can show some

basis for federal jurisdiction.  Danca v. Private Health Care Sys., Inc., 185 F.3d 1, 4 (1st Cir. 1999).  A defendant must remove a case within 30 days of when the grounds for removal can be first ascertained.  See 28 U.S.C. § 1446(b).

In this case, 3M asserts that this court has jurisdiction under the federal officer removal statute, § 1442(a)(1), which "allows private actors 'acting under' color of federal authority to remove a state-court action 'for or relating to any act under color of such office.'"  Rhode Island v. Shell Oil Prods. Co., LLC, 35 F.4th 44, 53 n.6 (1st Cir. 2022) (quoting § 1442(a)(1)).  If a plaintiff files a motion to remand, the defendant shoulders the burden of showing that federal jurisdiction exists and that removal was proper.  See Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 48 (1st Cir. 2008).

**BACKGROUND**

I.     The State files parallel lawsuits against 3M on the same day.

On May 29, 2019, the State of New Hampshire filed this suit against 3M and several other defendants in Hillsborough County Superior Court.  The same day that it filed this suit, the State filed a second lawsuit in the same court against 3M, DuPont, and others making virtually identical allegations of harm from PFAS contamination.  From the inception of this litigation, 3M and the State have been represented by the same lead counsel in both cases.

In both lawsuits, the State alleged that 3M supplied products containing PFAS compounds in New Hampshire when 3M knew or should have known that PFAS compounds are harmful to the environment and public health.  And, in both

suits, the State alleged that 3M's supply of substances containing PFAS has caused harmful, statewide contamination of New Hampshire's natural resources— including its soil, groundwater, surface water, and wildlife.

The one material difference between the two suits is that the State's other lawsuit relates only to PFAS contamination from AFFF. The court refers to the other suit as the "AFFF Suit."

By contrast, in this suit the State expressly disclaimed any recovery for contamination caused by AFFF. This suit relates only to PFAS contamination from sources <u>other than</u> AFFF.

Setting out this distinction, the initial complaint in this case alleged:

> Through this action, the State is not seeking damages, remediation, restoration or any other relief with respect to any contamination related to Aqueous Film-Forming Foam, which is a specialized category of products that contain PFAS compounds, as that is the subject of a separate action.

Doc. no. 1-3. ¶ 29. Similarly, in the AFFF Suit, the State alleged that:

> Through this action, the State is not seeking damages, remediation, restoration or any other relief with respect to any contamination from [PFAS] that is not related to the manufacture and use of AFFF, as damages from those compounds that are not from the manufacture and use of AFFF are the subject of a separate action.

Doc. no. 1-5 ¶ 29. The State has maintained this line between AFFF and non-AFFF contamination throughout the course of both this suit and the AFFF Suit.

A.   <u>Facts alleged in the initial complaint in this lawsuit.</u>[5]

The State alleged in the initial complaint in this suit that PFAS compounds produced by 3M have been essentially ubiquitous throughout the State, as 3M was the "primary manufacturer of PFAS chemistry in the United States" for the last 70 years and products with PFAS "have been used for decades in industrial settings" and "in the production of household and commercial products that are heat resistant, stain resistant, long lasting, and water and oil repellant."  Doc. no. 1-3 ¶¶ 40, 65.

PFAS compounds have "characteristics that cause extensive and persistent environmental contamination."  <u>Id.</u> ¶ 42.  In particular, PFAS compounds are "bioaccumulative as well as mobile," meaning that they "are readily transported through the air as well as the soil and into groundwater where they can migrate long distances."  <u>Id.</u> ¶ 45.  PFAS compounds "do not readily biodegrade or chemically degrade in the environment or in conventional treatment systems for drinking water or wastewater."  <u>Id.</u> ¶ 46.  And they are "difficult and costly to remove from soil and water."  <u>Id.</u> ¶ 49.

In the initial complaint as well in its amended complaints, the State broadly alleged that 3M's supply of PFAS has led to contamination of New Hampshire's "natural resources," which was defined to include, among other items, "the ocean

---

[5] The court reviews the facts as they were alleged in the initial complaint because whether 3M timely removed this suit depends on when the State first informed 3M of the facts supporting removability.  The facts alleged in the State's amended pleadings, as they are relevant to the issues in this order, are largely the same.

and its tidal estuaries," "streams, rivers, lakes, [and] ponds," as well as "all land . . .

owned, managed, held in trust, or otherwise preserved or protected by the State."

Doc. no. 1-3 ¶ 2.  The State alleged that PFAS compounds supplied by 3M have

accumulated in New Hampshire's soil, groundwater, surface water, and wildlife

including birds and game.  E.g., id. ¶¶ 156, 172, 179, 188.  The State alleged that

contamination has occurred statewide, meaning that the State wants to recover in

this action damages for contamination throughout the entire state, rather than in

one or several discrete geographic locations.  E.g., id. ¶ 11 ("PFAS has impacted

groundwater above current standards in every county in the State."); id. ¶ 14

("Defendants' manufacture, distribution, and sale of [PFAS] has caused, and

continues to cause, widespread injury to the State's groundwater and surface water,

fish, wildlife, marine resources, and other natural resources, as well as its

citizens."); id. ¶ 156 ("[PFAS compounds] have been found in soil, groundwater,

surface water, sediments, fish, wildlife, marine resources, biota, and other natural

resources in locations throughout New Hampshire.").  The initial complaint does not

exclude any location in New Hampshire from this lawsuit's scope, only damage

caused by AFFF.

     B.    <u>Facts alleged in initial complaint in the AFFF Suit.</u>

The State's initial complaint in the AFFF Suit contained similar allegations

as its initial complaint in this case.  In addition to its allegations about the harm

caused by PFAS and the scope of the lawsuit (also statewide and covering the

entirety of New Hampshire's "natural resources"), the State specifically alleged that

3M had supplied AFFF to the United States military in New Hampshire, noting, for example, that "[f]rom the 1960s through 2001, the United States Department of Defense purchased AFFF exclusively from 3M and Tyco/Ansul."  Doc. no. 1-5 ¶ 91. Furthermore, the State identified "the Pease Air Force Base in Newington [New Hampshire]; . . . [and] the New Boston Air Force Station Former Fire Department" as locations (among others) at which 3M had supplied AFFF that had contaminated the state's natural resources.  Id. ¶ 10.

II.     3M removes the AFFF Suit to federal court.

    In late July 2019, 3M removed the AFFF Suit to federal court under the federal officer removal statute, § 1442(a)(1).  State v. 3M, Case No. 19-cv-800-JD, ECF doc. no. 1.  In its notice of removal in the AFFF Suit, 3M asserted that the court had removal jurisdiction under § 1442(a)(1) because at least some of the PFAS contamination for which the State sought to hold 3M liable resulted from 3M's production of MilSpec AFFF—that is, AFFF that 3M produced for the United States military under a military specification.  Id. at 8.  In particular, 3M observed that "[p]laintiff's own allegations confirm that its alleged injuries arise in part from the use of MilSpec AFFF at military sites in New Hampshire and that 3M and the other Defendants were 'acting under' federal officers of the Department of Defense and its agencies when manufacturing MilSpec AFFF."  Id.  At that time, 3M also detailed its knowledge of the history of MilSpec AFFF, its supply of MilSpec AFFF to the United States military, and its disclosure of and the government's knowledge of the potential dangers of AFFF.

The State did not contest removal of the AFFF Suit.  Soon after 3M removed the AFFF Suit, the Judicial Panel on Multidistrict Litigation transferred the AFFF Suit to the District of South Carolina for participation in the AFFF multidistrict litigation ("MDL"), <u>In re Aqueous Film-Forming Foams Products Liability Litigation</u>, MDL No. 2874 (D.S.C.).

III.   <u>3M moves to change venue from Hillsborough County to Merrimack County.</u>

Although it removed the nearly identical AFFF Suit, 3M continued to litigate this suit in state court.  In October 2019, 3M moved to change venue, arguing that venue of this suit was improper in Hillsborough County.  3M contended that the proper venue for the suit was Merrimack County because the State's allegations "form the basis of a transitory action, as they 'have no locality,'" and "the purported harm to birds, fish, rivers, streams, and other natural resources is not alleged to be local or fixed to any one geographic location; the Complaint contemplates a harm that is transitory, sporadic in nature, and crosses county borders."  Doc. no. 12-3 at 4; <u>id.</u> at 5 ("The alleged environmental contamination caused by the Defendants could have—and allegedly has—arisen throughout the State . . . .").  Likewise, during a February 2020 hearing on the motion, 3M observed that the State's claims were "sweeping statewide claims," noting in particular 3M's understanding (based on the complaint) that the State's claims included not only "land" but also "things that move" such as wildlife and "[r]ivers, brooks, streams, [and] things that are not in one location . . . ."  Doc. no. 12-4 at 4.

In June 2020, the superior court (Nicolosi, J.) found that venue was improper in Hillsborough County and transferred the case to Merrimack County Superior Court.  <u>See</u> RSA 507:9 (fixing venue in "transitory actions" to the "county or judicial district" in which an in-state party resides); <u>State v. Cote</u>, 95 N.H. 108, 110 (1948) (stating that the State's principal place of business is the county in which its capital is located).  The superior court found that the complaint alleged a claim "that is effectively universal throughout New Hampshire."  Doc. no. 12-5 at 8.  The court continued, stating that, according to the allegations in the complaint, "[t]he invasion of PFAS has not targeted one county, or even distinct contiguous land in multiple counties.  Rather the contamination is so pervasive that the complaint makes no attempt to even identify any specific property upon which defendants have trespassed."  <u>Id.</u>  Further, the superior court stated that "these claims . . . have arisen in every county and the claim is more a complaint as to all land in the state."  <u>Id.</u>[6]

---

[6] The defendants also moved to dismiss the State's trespass claim for failure to state a claim.  The court granted defendants' motion in that respect, finding that "the State's allegation of a statewide trespass is too vague . . . as the Court cannot assess which lands have been trespassed upon and whether the State meets the requisite possessory rights for those lands."  Doc. no. 12-5 at 19.  While the State opposed the motion, it did not dispute the characterization of the complaint as alleging harm throughout the entire state.  <u>See</u> doc. no. 12-5 at 6-7 (describing the State's opposition).

IV.     In response to the second amended complaint, 3M alleges a federal contractor immunity defense but does not then remove the lawsuit.

After the state court granted defendants' October 2019 motion, the State filed its first amended complaint, which contained the same substantive factual allegations as the initial complaint.

Defendants then moved to dismiss the amended complaint, arguing that the State's public trust claim failed to state a claim upon which relief could be granted. In April 2021, the state court (Kissinger, J.) held a hearing on the motion to dismiss.  Doc. no. 23-7 at 24 (start of transcript); doc. no. 23-8 (transcript continued).  During the hearing, the State observed that its substantive allegations were unchanged from the initial complaint and stated that "[t]his case is about widespread contamination of public resources, and the State's drinking water, groundwater, surface water, land, natural resources, including wildlife, and other public properties."  Doc. no. 23-8 at 11.   The State contended that PFAS compounds are released "into water in the form of liquid," "in powder form," and "by smoke stacks into the air."  Id. at 13.  The State added that PFAS compounds "can be discharged into waste streams" and "[t]here are numerous pathways by which these compounds are released into the environment, make their way into the natural world, water, land, [and] into public [] drinking water."  Id. at 13-14.

The court granted defendants' motion to dismiss the State's public trust claim, and the State subsequently filed a second amended complaint.  In October 2021, 3M answered the second amended complaint.  In its answer, 3M asserted a federal contractor immunity defense, specifically stating that "[s]ome or all of the

11

Plaintiff's claims are barred, in whole or in part, because 3M is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority or agency."  Doc. no. 12-11 ¶ 15.  3M, however, did not attempt to remove this suit at that time.

V.   <u>The State produces a non-exhaustive list of locations with PFAS contamination that includes a site near Pease Air Force Base.</u>

On December 17, 2021, the State produced, as part of its initial disclosures, a non-exhaustive list of 244 locations within New Hampshire with PFAS contamination.  That list, which the State noted was limited to sites for which a state agency had opened a discrete investigation file, included locations throughout New Hampshire, but it did not list Pease Air Force Base or any military facility.  The list, however, did include a location near Pease Air Force Base, namely, PSNH Schiller Station.

The State acknowledged in its initial disclosures that "there may be references to investigations or sites with connections to the use of" AFFF, but reiterated that, considering its disclaimer for AFFF contamination, any references "should not be construed as indicating that the State seeks recovery in this case for contamination caused in whole or in part by AFFF . . . ."  Doc. no. 1-4 at 2.  The State also asserted that the sites it identified in its initial disclosures "do not represent the location of the harm resulting in the totality of the State's claimed damages."  <u>Id.</u> at 3.

VI. <u>3M removes this suit under the federal officer removal statute three years after it began and while it was on appeal before the New Hampshire Supreme Court.</u>

The litigation of this suit in state court continued.  In July 2021, the state superior court denied a motion to dismiss two defendants for lack of personal jurisdiction (Corteva and The Chemours Company).  Those defendants appealed the court's denial of their motion to the New Hampshire Supreme Court, which heard oral argument in late February 2022.

Meanwhile, in March 2022, the parties prepared for a case structuring conference before the superior court.  In preparing for the conference, the parties disputed certain discovery issues, and, in particular, the State hotly disputed 3M's request to issue approximately 12,000 interrogatories.  3M's request was premised on its claimed belief that the case would involve 244 trials or "mini-trials"—one for each of the 244 sites listed by the State in its December 2021 initial disclosures. Thus, 3M asserted, it should be permitted to issue 50 interrogatories for each site on the State's list.

On March 30, 2022, the State responded by reiterating that "[t]his is a state-wide contamination case that will be tried on alternative liability theories, not a site-by-site case requiring 244 mini site-specific trials as 3M suggest[s]."  Doc. no. 1-6 at 4.  The State continued, stating that it had "repeatedly explained" that "the identified sites do not demonstrate the totality of the State's harm.  The State's natural resources, including substantial surface and groundwater resources, are contaminated across the State, and the State is seeking recovery for harm to those resources which cannot be identified in a site list."  <u>Id.</u>

On April 29, 2022—30 days after the State's response and nearly three years after the State began this suit—3M removed this suit under § 1442(a)(1) claiming that the State's response was the first time it learned that this suit involved statewide contamination.[7]

## DISCUSSION

The State moves to remand.  Among other arguments, the State contends that the court lacks removal jurisdiction under § 1442(a)(1) because, considering the disclaimer for contamination from AFFF, 3M has not shown that a connection exists between the State's claims and 3M's production of MilSpec AFFF.  The State also argues that 3M's removal of this suit nearly three years after it began was untimely under 28 U.S.C. § 1446(b), which creates a 30-day clock to remove that begins when the removing defendant can first ascertain removability.  The State argues that 3M could have first ascertained the removability of this suit under § 1442(a)(1) no later than December 17, 2021, when the State provided its initial disclosures that referenced sites or investigations with connections to 3M's supply of AFFF.  The State thus argues that 3M should have removed the case by mid-January 2022, and its failure to do so requires remand.

3M objects.  3M argues that a connection exists between the State's claims and 3M's supply of MilSpec AFFF because PFAS contamination from MilSpec AFFF has plausibly overlapped or commingled with contamination from other sources.  As

---

[7] The New Hampshire Supreme Court had not issued a ruling at the time of 3M's removal, and it subsequently dismissed the pending appeal.

to timeliness, 3M argues that the State's initial disclosures were insufficient because they did not connect 3M's supply of MilSpec AFFF to any specific location at issue in this suit.  Rather, 3M contends that if removal were ever ascertainable, it was only after the State disclosed in late March 2022 that this suit involved statewide contamination.  3M also contends that the State's disclaimer of recovery for AFFF contamination created an ambiguity as to whether the case could be removed.

The court first addresses the parties' arguments as to the existence of removal jurisdiction under § 1442(a)(1), and then discusses their arguments as to timeliness under § 1446(b).[8]

## I.   The Federal Officer Removal Statute

The State first argues that remand is warranted because there is no jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  The court agrees.

The federal officer removal statute, § 1442(a)(1), is a "specialized removal statute" that "allows private actors 'acting under' color of federal authority to remove a state-court action 'for or relating to any act under color of such office.'"

---

[8] Prior to his recusal, Judge Barbadoro held oral argument on the State's motion to remand.  The court has reviewed the transcript of oral argument in making this ruling and finds that no further argument is necessary or warranted to aid the court's decision.

Rhode Island, 35 F.4th at 53 n.6 (quoting 28 U.S.C. § 1442(a)(1)).[9]  Removal is

permissible under § 1442(a)(1) if the removing party shows (1) that it "acted under a

federal officer"; (2) that the claims against it are "for" or relate to "the alleged

official authority"; and (3) that it "will raise a colorable federal defense."  Id. (citing

Moore v. Elec. Boat Corp., 25 F.4th 30, 34 & n.2 (1st Cir. 2022)).[10]

Congress intended § 1442(a)(1) to provide "broad" removal rights to a

defendant who works with the federal government and asserts a federal defense.

Willingham v. Morgan, 395 U.S. 402, 406 (1969) ("At the very least [§ 1442(a)(1)] is

broad enough to cover all cases where federal officers can raise a colorable defense

arising out of their duty to enforce federal law.  One of the primary purposes of the

removal statute—as its history clearly demonstrates—was to have such defenses

litigated in the federal courts.").  Thus, unlike the general removal provision, which

---

[9] Specifically, § 1442(a)(1) states that a defendant may remove a state-court action that is against or directed to:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

[10] 3M asserts a federal contractor immunity defense.  To prove that defense, the defendant must establish three elements: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States."  Boyle v. United Tech. Corp., 487 U.S. 500, 512 (1988).

is strictly construed in favor of remand, § 1442(a)(1) is broadly construed in favor of

removal.  Watson v. Philip Morris Cos. Ins., 551 U.S. 142, 147-48 (2007).

    The requirement that a claim be "for" or "relate to" the alleged federal

authority is a "nexus" requirement, but not a causation requirement.  Moore, 25

F.4th at 34 & n.2.  That is, only a "nexus" between the claims and the alleged

official authority need exist; it is sufficient that at least one of the plaintiff's claims

is "connected" or "associated" with the defendant's acts under color of federal office.

Baker v. Atlantic Richfield Co., 962 F.3d 937, 943-44 (7th Cir. 2020) (explaining

that 2011 amendments to § 1442(a)(1) removed requirement of causal connection

and collecting appellate cases holding likewise).

    Other federal courts have found that similar, specific limitations on the scope

of a plaintiff's claims eliminate a potential relationship between the plaintiff's

claims and a defendant's federal acts.  For example, in Hayden v. 3M Company, the

plaintiff alleged that he suffered from mesothelioma caused by lifetime exposure to

asbestos and asbestos-based products produced by 78 different defendants.  No. 15-

2275, 2015 WL 4730741, at *3-4 (E.D. La., Aug. 10, 2015).  However, the plaintiff

disclaimed any recovery for injuries resulting from asbestos exposure during his

service in the United States Navy.  Id.

    During a deposition the plaintiff nonetheless testified that two of the named

defendants had manufactured a product which enhanced his exposure to asbestos

while he served in the Navy.  Id.  Based on that testimony, one defendant removed

the case to federal court under § 1442(a)(1).  Id.  The plaintiff moved to remand,

arguing that the disclaimer precluded federal jurisdiction.  Id.  The district court agreed, finding that the disclaimer was like those in other cases in which jurisdiction was found lacking.  Id. at *3.  Considering that precedent, the district court found that the disclaimer "eliminates any cause of action related to exposure while [the plaintiff] was in the Navy and the only valid grounds for removal relate to that specific time period."  See id. at *4.

The court lacks removal jurisdiction under § 1442(a)(1) because 3M has not shown that a "nexus" exists between the State's claims in this case and 3M's alleged acts under federal authority.  Like the plaintiff in Hayden, the State has consistently disclaimed any recovery for contamination resulting from 3M's production of AFFF.  That disclaimer is effective and eliminates the connection between the State's broad statewide claims and 3M's production of MilSpec AFFF for the United States military.  See 28 U.S.C. § 1442(a)(1); Batchelor v. Am. Optical Corp., 185 F. Supp. 3d 1358, 1363-64 (S.D. Fla. 2016) (stating that federal courts have "consistently" granted motions to remand in cases where the plaintiff expressly disclaims recovery for the claims on which federal removal is based); Hayden, 2015 WL 4730741, at *3-4; but see Nessel v. Chemguard, Inc., 2021 WL 744683 (W.D. Mich. Jan. 6, 2021) (denying motion to remand in case removed under federal officer removal statute when plaintiff disclaimed recovery for contamination from MilSpec AFFF but not commercially produced AFFF).[11]

---

[11] Courts generally find that non-specific disclaimers which purport to waive all federal claims based on generic, boilerplate language are ineffective.  See

Here, as in <u>Hayden</u>, there is no scenario under which 3M could be found liable for any damages caused by AFFF.  That is, regardless of whether 3M's AFFF conformed to a specification required by the United States military or whether 3M appropriately warned the government about the dangers of PFAS, 3M cannot be liable in this case for contamination resulting from its alleged supply of MilSpec AFFF.  Doc. no. 12-1 at 10-11 (State's motion to remand) ("Because the State is not making any claims here for injuries from the only product that 3M asserts it supplied at the direction of a federal officer, the validity of that assertion will simply not be tested in this action.").  If the evidence, for example, shows that AFFF caused any of the damages in this case, the portion attributable to AFFF would be subtracted from any damages awarded the State.  And if no apportionment is possible, no damages could be awarded.  3M would prevail without any need to assert a defense premised on its acts under federal authority.  To the extent AFFF is relevant, its presence in the contamination could eliminate recovery for the State—regardless of why or for whom 3M made it.  The State's claims are neither "for" — nor do they "relate to" — 3M's actions under federal authority.

_____

Batchelor, 185 F. Supp. 3d at 1363 (describing circumstances in which disclaimers are ineffective).  3M does not contend that the State's disclaimer falls within this category of generic disclaimers (i.e., those that disclaim all federal claims without specifying which ones).  It is undisputed that the State's disclaimer here, which identifies specific claims against 3M for its production of AFFF, is not such a generic disclaimer.

3M relies primarily on <u>Nessel v. Chemguard, Inc.</u>, to support its position.[12]
In <u>Nessel</u>, the court denied remand and found that the requirements of the federal
officer removal statute were met when, as here, the plaintiffs (in effect, the State of
Michigan) brought parallel PFAS contamination suits against several defendants.
<u>Id. at *1</u>.  One suit related only to PFAS contamination from commercially produced
AFFF, while the second suit related only to MilSpec AFFF.[13]  <u>Id.</u>  The defendants
removed the commercial AFFF suit under § 1442(a)(1), and the plaintiffs moved to
remand.  Plaintiffs argued, as the State does here, that no "nexus" existed between
their claims in the commercial AFFF case and the defendant's acts under official
authority.  <u>Id.</u>

The district court denied the motion to remand, finding that the record did
not make it clear whether injuries from commercial AFFF and MilSpec AFFF "will
be distinguishable."  <u>Id.</u>  at *3.  On the contrary, the court stated that the trial court
"will likely have to engage in a detailed fact-finding process to determine whether
the injuries from MilSpec and Commercial AFFF can be distinguished . . . ."  <u>Id.</u>
Nor was the record clear in <u>Nessel</u> on whether plaintiffs' harm in fact "occurred
from actions taken while Defendants were acting under color of federal office[.]"  <u>Id.</u>
The court explained that, notwithstanding the plaintiffs' limitation of their case to

---

[12] 3M contends that the Judicial Panel on Multidistrict Litigation "endorsed"
the reasoning in <u>Nessel</u> when it transferred that case to the <u>In re AFFF</u> MDL.  Doc.
no. 39 at 2 n.2.  However, the court could find no such endorsement in the documents
cited by 3M.  <u>See id.</u>

[13] The MilSpec AFFF suit in <u>Nessel</u> was originally filed in federal court.

commercial AFFF, "Plaintiffs cannot decide what defense Defendants might present.  Consider, for example, a tort case: a plaintiff can allege that a defendant and only that defendant caused his injury, but a plaintiff cannot prevent a defendant from presenting an alternate theory of causation."  Id.

The instant case is distinguishable from Nessel because the State's two cases here involve AFFF and non-AFFF contamination, rather than contamination from two different kinds of AFFF.  In Nessel, whether an alternate source of contamination was MilSpec AFFF, as opposed to another version of AFFF, was legally significant because the defendants' liability turned on whether the factfinder concluded that the defendant produced the AFFF for the federal government under a military specification.  Here, unlike Nessel, whether an alternate source of contamination was MilSpec AFFF is irrelevant because this suit does not involve AFFF, regardless of whether it is MilSpec or another version of AFFF.

In addition, the court does not find the reasoning of Nessel persuasive.  If the sources of contamination cannot be distinguished, 3M cannot be held liable.  That is, the State will fail to establish its own case, which is premised on the existence of contamination from some non-AFFF source.  And, if a factfinder can distinguish the sources of contamination, 3M will prevail to the extent the factfinder determines contamination came from AFFF.  This is true regardless of whether 3M supplied the AFFF under federal authority or warned the government about its dangers.

In a final attempt to persuade the court that the State's disclaimer is ineffective to defeat removal, 3M points to the inapplicability of the "well-pleaded

complaint rule" in cases removed under § 1442(a)(1).  The well-pleaded complaint rule governs the determination of whether a case arises under federal law for purposes of federal question jurisdiction.  E.g., Rhode Island, 35 F.4th at 51.  The court must make the determination from the face of the plaintiff's complaint — mindful that the plaintiff is "master" of its claims.  Id.  So, in most circumstances, the non-federal cast of a complaint will prevent the defendant from removing it.  Id. The federal officer removal statute, however, overrides the well-pleaded complaint rule—at least inasmuch as removal jurisdiction under § 1442(a)(1) turns on the defendant's assertion of a colorable federal defense.  See, e.g., Durham v. Lockheed Martin Corp., 445 F.3d 1247, 1253 (9th Cir. 2006).

While 3M is correct that the well-pleaded complaint rule does not apply under § 1442(a)(1), the defendant must still establish that a nexus exists between the "charged conduct and the asserted official authority."  Jefferson Cnty., Ala. v. Acker, 527 U.S. 423, 431 (1999).  Simply asserting a federal defense is not, on its own, sufficient to show removal jurisdiction under § 1442(a)(1).  Rather, § 1442(a)(1) also requires that the plaintiff's claims have a nexus to the defendant's acts under federal authority.  Id.  The nexus does not exist here — for the reasons already explained.

In sum, 3M has not met its burden to show that a nexus exists between the claims in this case and its alleged actions under federal authority.  Therefore, remand is necessary.

II.    <u>Timeliness of Removal.</u>

The State also argues remand is necessary because 3M's removal of this case was untimely under 28 U.S.C. § 1446(b), which requires a defendant to remove a case within 30 days of when its removability can be first ascertained.  The court agrees.

A notice of removal in a civil action "shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."  28 U.S.C. § 1446(b)(1).  "[I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."  Id. § 1446(b)(3).

In practice, the 30-day clock begins if either one of two conditions exists: (1) the case stated by the initial complaint is removable or (2) subsequent papers allow the defendant to ascertain removability.  See Romulus v. CVS Pharm., Inc., 770 F.3d 67, 72 (1st Cir. 2014) ("We now hold that Section 1446(b)'s thirty-day clocks are triggered only when the plaintiffs' complaint or plaintiffs' subsequent paper provides the defendant with sufficient information to easily determine that the matter is removable.").   Unless the issue is waived, a case removed after the 30-day clock begins and ends must be remanded.  See Universal Truck & Equipment Company, Inc. v. Southworth-Milton, Inc., 765 F.3d 103, 110 (1st Cir. 2014).

"When removability is not clear from the initial pleading," the court "looks to the plaintiffs' subsequent papers" to determine whether or when removability first became ascertainable.  See Romulus, 770 F.3d at 74.  In assessing whether subsequent papers start the 30-day clock, the First Circuit applies a "bright-line approach" that looks to whether the "plaintiffs' pleadings or the plaintiffs' other papers provide the defendant with a clear statement of" the grounds for removal or with "sufficient facts" from which the grounds for removal can be "easily determined."  See id. at 69, 72; accord Dietrich v. Boeing Co., 14 F.4th 1089, 1093 (9th Cir. 2021) (stating that the facts that demonstrate removability must be stated "clearly" and "unequivocally" before 30-day clock begins).

The defendant has "no duty" to "investigate or to supply facts outside of those provided by the plaintiff."  Romulus, 770 F.3d at 75.  At the same time, the defendant must "apply a reasonable amount of intelligence in ascertaining removability."  Id. (quoting Cutrone v. Mortgage Electronic Registration Sys., Inc., 749 F.3d 137, 143 (2d Cir. 2014)).  The use of a "reasonable amount of intelligence" includes considering uncontested information in the record, even if the defendant originally produced the information.  See id. at 79 n.9.

A.   The First Circuit construes the term "other paper" broadly and the initial complaint in the AFFF Suit qualifies.

To determine whether the 30-day clock started under § 1446(b)(3), the court must analyze what is "apparent on (or easily ascertainable from) the face of the plaintiff's pleadings" and "other papers."  Id. at 72-75.  A threshold issue in determining when 3M could first ascertain the removability of this suit is which

papers the court may consider, and, in particular, whether documents filed in the AFFF Suit can be considered "other paper" for purposes of triggering the 30-day clock under § 1446(b)(3) in this suit.  Notably, the State's initial complaint in the AFFF Suit fills in several details about 3M's supply of AFFF for the United States military, and the facts alleged in the AFFF Suit underlie 3M's removal of this suit.

Ordinarily, papers filed in one case would not be relevant and could not be considered in ascertaining the removability of another case.  See Wisconsin v. Amgen, Inc., 516 F.3d 530, 534 (7th Cir. 2008) (holding, in a case that did not involve identical parties, that "there can be no removal on the basis of an order or other document in another case" but leaving open the possibility that a case with a "distinguishing feature" might except it from the general rule).  However, under the unique circumstances here, the First Circuit's reasoning in Romulus provides support for considering papers filed in the AFFF Suit.  See 770 F.3d at 77.

In Romulus, the defendant removed the suit under statutes that permit removal of a class-action suit if the amount in controversy exceeds $5,000,000 and other requirements are met.  Id. at 70.  The removal occurred more than 30 days after the filing of the initial complaint.  Id.  The plaintiff moved to remand, and the district court granted the motion on the ground that removal was untimely.  The district court found no basis to trigger the 30 days under § 1446(b)(3).  Id. at 71.

The First Circuit reversed, concluding that § 1446(b)(3) applied because the defendant had received an informal email from plaintiff's counsel which, for the first time, disclosed data to the defendant that was "a very important component" of

25

its amount-in-controversy calculation.  Id. at 71.  This data, when combined with the plaintiff's pleadings and other data provided by the defendant in an earlier notice of removal, was sufficient for the defendant to "easily determine" the case's removability, thus triggering the 30-day clock for removal.  Id. at 72.  Because the defendant removed the case within that 30-day period, the First Circuit concluded that the defendant's removal was timely under § 1446(b)(3).  Id.

The First Circuit took a practical and common-sense approach to answering the fact-intensive question of what constitutes sufficient notice of removability.  The court interpreted § 1446(b)(3)'s term "other paper" to include documents such as "informal correspondence from the plaintiff to the defendant."  Id. at 78.  Thus, under Romulus, a document need not be formally filed in a case or served on the defendant to be considered an "other paper" for purposes of removal.  Id.  It is more important that the document came from the plaintiff, was received by the removing defendant, and unambiguously revealed facts that affected the removability of the case at hand.  See id. ("We hold that correspondence from the plaintiff to the defendant concerning damages can constitute an 'other paper' for purposes of Section 1446(b)(3)."); 28 U.S.C. § 1446(b)(3) (stating that the 30-day clock begins when the defendant receives "through service or otherwise," inter alia, an "other paper" that first allows it to ascertain removability) (emphasis added).

Where there are multiple cases involving the same defendant, courts have looked to orders issued in those other cases to determine whether information in those orders trigger § 1446(b)(3)'s 30-day clock.  The Fifth and Third Circuits have

held that, in special circumstances, when a defendant which sought removal was a party in an unrelated case and in that case the court issued an "order" that affected the case's removability, the order triggered the 30-day clock under § 1446(b)(3).  See Green v. R.J. Reynolds Tobacco Co., 274 F.3d 263, 267 (5th Cir. 2001) ("[A] decision by a court in an unrelated case, but which involves the same defendant, a similar factual situation, and the question of removal [] can constitute an 'order' under § 1446(b).");  Doe v. Am. Red Cross, 14 F.3d 196 (3d Cir. 1993) (same).  The cases which the First Circuit relied on in Romulus are likewise consistent with this rule.  See Addo v. Globe Life and Acc. Ins. Co., 230 F.3d 759, 761-62 (5th Cir. 2000) ("[O]ther paper must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction.");  see also Yarnevic v. Brink's, Inc., 102 F.3d 753, 755 (4th Cir. 1996) ("We do not think § 1446(b) requires that the 'motion, order or other paper' be part of the state court record, . . . .  The 'motion, order or other paper' requirement is broad enough to include any information received by the defendant, 'whether communicated in a formal or informal manner.'").

Considering the First Circuit's approach to this question in Romulus, and under the unique circumstances present here, the court finds that certain documents filed in the AFFF Suit qualify as "other paper" sufficient to trigger the 30-day clock under § 1446(b)(3).  There are unique facts in this case that make that finding appropriate.  Specifically, both this suit and the AFFF Suit involve the same plaintiff, the same removing defendant, and the same lawyers; both suits were filed

on the same day; they cover largely the same factual and legal issues; and, 3M's basis for its removal of this suit is the alleged inherent link between the claims in this suit and the State's claims in the AFFF Suit.

> B.  Considering the pleadings and other papers that the State provided to 3M, 3M could have first ascertained the removability of this suit more than 30 days before its April 29, 2022 notice of removal.

Here, there is no dispute that the case stated by the initial complaint in this suit, standing on its own, was not removable.  While the initial complaint covered contamination statewide, it did not connect 3M's supply of AFFF to any military sites in New Hampshire.  Therefore, the court looks to § 1446(b)(3) to determine whether any subsequent papers allowed 3M to ascertain this suit's removability under the federal officer removal statute.  See Romulus, 770 F.3d at 72.

3M did not file its notice of removal in this suit until April 29, 2022, so removal was untimely if 3M could first ascertain the removability of this suit under § 1442(a)(1) more than 30 days earlier—i.e., prior to March 30, 2022.  See 28 U.S.C. § 1446(b)(3).  The initial complaint in this suit, when considered with the initial complaint in the AFFF Suit, clearly and unequivocally stated sufficient facts from which 3M could have easily determined the basis for its removal, which is that there is plausible overlap in PFAS contamination in areas covered by this suit from both MilSpec AFFF and non-AFFF sources.  These facts were revealed almost three years before March 30, 2022, so 3M's removal under § 1442(a)(1) was untimely.

3M makes several arguments in response.  To start, 3M asserts that the State did not make clear that this suit involved statewide contamination until

March 30, 2022.  The record proves otherwise.  The initial complaint clearly and unambiguously alleged that the case involved statewide contamination.  That is enough.  But if it were not, the superior court confirmed that 3M's "site-by-site" viewpoint had no validity in its June 2020 order which described the State's complaint as broadly alleging harm to "all land in the state."  Doc. no. 12-5 at 8.  The State made that point again in its April 2021 oral argument on defendants' motion to dismiss the public trust claim.  Doc. no. 23-8 at 11.  The State, of course, reiterated it one more time on March 30, 2022, but the State repeating what it had already made clear does not change when removability was <u>first</u> ascertainable by 3M.  <u>See</u> § 1446(b)(3).

3M relies on the disclaimer to support its argument that it could not have known the case was removable.  That is, 3M could not know that the case involved MilSpec AFFF because the State expressly disclaimed MilSpec AFFF.  3M's basis for removing this case, however, is that the court should disregard that disclaimer. And, whether disclaimers like the State pleaded in these cases are sufficient, as a matter of law, to undermine removal jurisdiction under § 1442(a)(1) has been a long-running legal question.  <u>See, e.g.</u>, <u>Hayden</u>, 2015 WL 4730741, at *4 (disclaimer effective); <u>Jennings v. Bell Helicopter Textron, Inc.</u>, 2012 WL 12883239, at *4 (S.D. Cal. Oct. 23, 2012) (finding that disclaimer is ineffective and collecting cases finding the same).  Thus, 3M's argument as to removal jurisdiction under § 1442(a)(1) (i.e., the State's disclaimer is ineffective to defeat removal) was always available to 3M. For that reason, it is not a persuasive basis to delay the start of the 30-day clock

under § 1446(b)(3).  See Dahl v. R.J. Reynolds Tobacco Co., 478 F.3d 965, 970 (8th

Cir. 2007) (holding that the removing defendant could "ascertain" removability of a

suit under the federal officer removal statute notwithstanding federal courts'

competing views about whether federal officer jurisdiction would exist under facts

like those in the case).

    The Eighth Circuit explained in Dahl that Congress did not intend for

§ 1446(b) to permit a defendant to delay removal simply because it lacked a

definitive legal basis to support removal jurisdiction.  See id.  Therefore, so long as

the plaintiff supplies sufficient facts for the defendant to easily determine that it

can non-frivolously remove the case under the pertinent statute, the 30-day clock

under § 1446(b)(3) begins.[14]  Cf. Universal Truck & Equip. Co., 765 F.3d at 108

(holding that 30-day clock was triggered for purposes of removal on diversity

grounds even though plaintiff included non-diverse defendants because it was

apparent from the face of the complaint that the non-diverse defendants were

fraudulently joined); Universal Truck & Equip. Co., Inc. v. Caterpillar, Inc., 653

Fed. Appx. 15, 19 (1st Cir. June 27, 2016) (explaining the decision in Universal

Truck & Equip Co., 765 F.3d at 108, and stating that the 30-day clock started in

that case because "[d]efendants knew (or should have known) from the case's

---

[14] Courts have held that an appellate court's abrogation of a rule that previously foreclosed removal jurisdiction begins the 30-day clock under § 1446(b)(3). See Borne v. ANCO Insulations, Inc., No. 20-134-BAJ-RLB, 2020 WL 6277307, at *6 (M.D. La. Sept. 18, 2020) (finding that 30-day clock for removal began when the Fifth Circuit overruled prior precedent about whether § 1442(a)(1) required a causal connection or mere nexus).  Such a circumstance does not exist here.

beginning that they could remove the suit to federal court under diversity
jurisdiction").

The State's disclaimers in this and the AFFF Suit were always clear and
unambiguous. Since the beginning of this case, the State has changed neither the
disclaimer nor the scope of its claims. 3M's argument that the State's disclaimer
was insufficient to defeat removal jurisdiction was obvious from the face of the
initial complaint, and it was always known to 3M (or always should have been
known to 3M). For those reasons, the State's disclaimer did not delay or prevent
the start of the 30-day clock under § 1446(b). See Universal Truck & Equip Co., 765
F.3d at 108; Dahl, 478 F.3d at 970.

3M also argues that removability was not ascertainable because it only
determined that § 1442(a)(1) was applicable to this suit after it conducted an
independent investigation which revealed that "contamination from MilSpec AFFF
sources plausibly overlaps with the putative non-AFFF contamination ostensibly at
issue in this action." See doc. no. 30-1 at 10. This argument lacks merit for several
reasons. First, it was clear from the initial pleadings that there was overlap in the
areas of contamination covered by the two suits. Because the State alleged from the
outset that there was overlap in contamination, 3M's "plausible overlap" theory was
ascertainable from the initial pleadings.

Second, if the facts alleged in the pleadings were insufficient for 3M to
remove under § 1442(a)(1), 3M filled in any remaining blanks when it removed the
AFFF Suit in July 2019. See Romulus, 770 F.3d at 79 n.9 (stating that the

31

defendant cannot ignore facts that it submitted into the record to support an earlier removal); State v. 3M, Case No. 19-cv-800-JD, ECF doc. no. 1 at 8 ¶¶ 20-30 (discussing history of MilSpec AFFF and of 3M's supply of MilSpec AFFF in New Hampshire). The factual basis for 3M's removal of this suit is the same as the factual basis for its July 2019 removal of the AFFF Suit: 3M's supply of MilSpec AFFF at Pease Air Force Base. Compare doc. no. 1 ¶ 30 (notice of removal in this suit) ("MilSpec AFFF released from the Pease Air Force Base plausibly migrates to the Great Bay estuary and other surrounding surface waters where it commingles with PFAS that derives from other, non-AFFF sources."), with State v. 3M, Case No. 19-cv-800-JD, ECF doc. no. 1 at 8 ¶ 20 (AFFF Suit Notice of Removal) (removal justified because the State alleged use of AFFF at Pease Air Force Base). The only relevant difference between this suit and the AFFF Suit is the State's disclaimer of recovery for AFFF contamination, and, as discussed, the potential ineffectiveness of this disclaimer to undermine removal jurisdiction was apparent from the initial pleadings, so it did not obviate 3M's responsibility to remove within 30 days after the State provided sufficient facts for 3M to set forth its plausible overlap theory. See Universal Truck & Equip. Co., 765 F.3d at 108; Dahl, 478 F.3d at 970. Because the facts alleged in both suits are the same, and the basis for removal in both suits is the same, and because 3M could have always raised its legal argument that the one difference between the cases—the disclaimer—is ineffective to defeat removal jurisdiction, the removal statute required 3M to remove this suit at least within 30 days of removing the AFFF Suit. See id.

The court rejects 3M's plausible overlap argument for a third reason.  If a specific location in which plausible overlap in contamination were necessary to trigger § 1446(b) notwithstanding the breadth of the State's initial pleadings or 3M's earlier removal of the AFFF Suit on the same grounds, the State's December 2021 initial disclosures revealed that the State intended to recover for contamination from non-AFFF sources at PSNH Schiller Station in Portsmouth. PSNH Schiller Station is near Pease Air Force Base, where it has been undisputed from the beginning that 3M supplied MilSpec AFFF.  The State also alleged in its initial complaints that contamination from both AFFF and non-AFFF sources has occurred in tidal estuaries, doc. nos. 1-3 ¶ 2 and 1-5 ¶ 3, and a large, well-known tidal estuary—Great Bay—directly abuts Pease Air Force Base.  That the locations are close to each other is sufficient because the State alleged that PFAS compounds migrate "long distances" through soil and groundwater and do not decompose once released.  Doc. no. 1-3 ¶¶ 45-48 (alleging that "[o]nce these PFAS compounds are applied, discharged, disposed of, or otherwise released onto or into the air, soil, sediments or water, they migrate through the environment and into groundwater, surface water, fish, wildlife, marine resources, and other natural resources.").  3M only needed to apply a "reasonable degree of intelligence," Cutrone, 749 F.3d at 143, to easily determine that PFAS from MilSpec AFFF released at Pease Air Force Base plausibly overlaps with non-AFFF contamination at PSNH Schiller Station or Great Bay.

3M also relies on <u>Orange County Water District v. 3M Company</u> to support its argument against remand.  2022 WL 605630, at *1-2 (9th Cir. Mar. 1, 2022).  In <u>Orange County Water District</u>, the Ninth Circuit reversed, in an unpublished decision, a district court's remand order based on untimeliness.  2022 WL 605630, at *1-2.  The Ninth Circuit reasoned that § 1446(b)'s 30-day clock was not triggered by an ambiguous statement that military sites were "potential sources" of environmental contamination subject to the suit, which involved several defendants.  <u>Id.</u>  The Ninth Circuit held that this statement did not clearly and unequivocally connect <u>3M</u> to the suspected source of environmental contamination forming the lawsuit's basis.  <u>Id.</u>

Orange County Water District is distinguishable.  Here, the State made clear and unambiguous in its pleadings that the alleged contamination covered the whole of New Hampshire, including certain military sites such as Pease Air Force Base.  The pleadings added that 3M supplied AFFF to the United States military in New Hampshire, which caused contamination of soil and groundwater in New Hampshire.  And, lastly, the State's allegations were not conditional or merely asserting "potential" contamination by an unspecified defendant; rather, the State alleged that 3M <u>had</u> supplied AFFF at military sites in New Hampshire which migrated long distances and contaminated land and water throughout the entire state.

Finally, 3M does not argue that it could not have ascertained the facts to assert a colorable federal contractor immunity defense prior to March 30, 2022.

Presumably this is because, in its 2019 notice of removal in the AFFF Suit, 3M set

out all of facts it uses now to assert that defense.  And, under <u>Romulus</u> the

defendant cannot ignore facts that it supplied when it previously put them in the

record and relied on them.  <u>See</u> 770 F.3d at 79 n.9 (stating that defendant was

under "no duty" to provide facts for removal originally, but defendant "could not

subsequently ignore" an "uncontested fact" alleged in an earlier attempt at

removal).

III.    <u>Summary</u>

In summary, the court finds two alternative bases on which to remand this

lawsuit.  First, 3M has not shown that a "nexus" exists between the State's claims

in this case and its production of AFFF for the United States military.  Therefore,

the elements for removal jurisdiction under the federal officer removal statute,

§ 1442(a)(1), have not been met.

Second, 3M's removal was untimely under § 1446(b).  Applying a reasonable

degree of intelligence to the clear and unambiguous facts alleged by the State, 3M's

theory for removal (i.e., that PFAS compounds from MilSpec AFFF plausibly

migrated and commingled with PFAS compounds from other sources) was

ascertainable more than 30 days before 3M filed its notice of removal in this suit.

The record reveals at least three triggers for the 30-day clock to begin to run under

§1446(b)(3) that 3M ignored during the three years of this litigation: the May 2019

complaint in the AFFF Suit, the July 2019 removal of the AFFF Suit, and the

State's December 2021 initial disclosures.  Thus, 3M's notice of removal filed on April 29, 2022, was untimely.  See 28 U.S.C. § 1446(b)(3).

## CONCLUSION

For the foregoing reasons, the State's motion to remand (doc. no. 12) is granted.  Any pending motions are denied as moot.  This case shall be remanded to the Merrimack County Superior Court.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

March 29, 2023

cc:      Counsel of Record