# United States Court of Appeals
## For the First Circuit

---

No. 23-1362

STATE OF NEW HAMPSHIRE,

Plaintiff, Appellee,

v.

3M COMPANY,

Defendant, Appellant,

E.I. DUPONT DE NEMOURS & COMPANY; CHEMOURS COMPANY,
f/k/a THE CHEMOURS COMPANY, LLC; CORTEVA, INC.;
DUPONT DE NEMOURS, INC.,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Landya B. McCafferty, U.S. District Judge]

---

Before

Rikelman, Howard, and Kayatta,
Circuit Judges.

---

Michael A. Scodro, with whom Gary A. Isaac, Avi M. Kupfer, Mayer Brown LLP, Joseph A. Foster, Mark C. Rouvalis, Viggo Fish, and McLane Middleton were on brief, for appellant.
Kenneth A. Sansone, with whom SL Environmental Law Group, John D.S. Gilmour, Lana M. Rowenko, Kelley Drye & Warren LLP, John M. Formella, Attorney General of New Hampshire, Anthony J. Galdieri, Solicitor General of New Hampshire, and Christopher G. Aslin, Senior Assistant Attorney General of New Hampshire, Environmental Protection Bureau, were on brief, for appellee.

March 27, 2025

**KAYATTA**, **Circuit Judge**. In 2019, New Hampshire filed on behalf of its residents two lawsuits in state court against 3M Company ("3M") and several other chemical companies that have produced synthetic chemical substances to which the parties refer as "PFAS." The lawsuits each assert that the defendants designed defective PFAS products, negligently peddled those products to New Hampshire users, and concealed vital information about PFAS toxicity from unwitting users and regulators. The alleged result has been widespread PFAS contamination of the state's natural resources -- including its water, soil, vegetation, and animal life -- for which New Hampshire seeks to hold the companies responsible under state law.

The two lawsuits differ in one key respect: One seeks damages only for PFAS from a class of products called aqueous film-forming foam (AFFF). The complaint in that suit -- the "AFFF Suit" -- explicitly disclaims recovery for PFAS-containing non-AFFF products. By contrast, the other suit seeks damages only for injuries attributable to PFAS-containing non-AFFF products, explicitly disclaiming recovery for AFFF PFAS. We refer to that lawsuit -- the subject of this interlocutory appeal -- as the "Non-AFFF Suit."

This appeal poses three questions: (1) whether we have appellate jurisdiction over this appeal; (2) whether this case was removable pursuant to the federal officer removal statute, 28

U.S.C. § 1442(a)(1); and (3) whether 3M timely attempted removal pursuant to 28 U.S.C. § 1446(b)(3). We conclude that we have appellate jurisdiction. And because we agree with the district court that 3M untimely attempted removal, we affirm. We therefore need not finally decide whether the removal would have comported with the federal officer removal statute had it been timely. Our reasoning follows.

## I.

In July 2019, 3M removed the AFFF Suit to federal court under the federal officer removal statute on the grounds that the AFFF at issue likely included AFFF made by 3M for what was then the Pease Air Force Base located in Rockingham County, New Hampshire, under the direction of the U.S. military. New Hampshire did not dispute the removal of the AFFF Suit, which was eventually transferred to the District of South Carolina to become part of ongoing multidistrict litigation (MDL) for AFFF products pending in that court. See In re Aqueous Film-Forming Foams Prods. Liab. Litig., 357 F. Supp. 3d 1391 (J.P.M.L. 2018).

Meanwhile, this Non-AFFF Suit proceeded in state court. Over the next three years, the state court dismissed New Hampshire's trespass and public trust claims. In response, on August 25, 2021, New Hampshire filed a second amended complaint (the "complaint"), which remains the operative complaint.

In December 2021, New Hampshire filed its initial disclosures in this case. The disclosures included a non-exhaustive list of more than 200 sites that New Hampshire alleged were contaminated with non-AFFF PFAS.[1] In the disclosures, New Hampshire warned that some of the documents concerning the disclosed sites may reference "sites with connections to the use of [AFFF]," but reiterated that the state was not seeking recovery for any AFFF-related injury.

Four months later, 3M removed this case. To explain its removal, 3M pointed to its own independent investigation, which indicated that PFAS from an AFFF product called MilSpec AFFF that 3M manufactured at the direction of the U.S. military for Pease Air Force Base had plausibly commingled with non-AFFF PFAS pollution in nearby bodies of water, such as the Great Bay Estuary. Repeatedly stressing that the state alleged "statewide" contamination by non-AFFF PFAS, including contamination in an area encompassing Pease Air Force Base, 3M argued that the injuries alleged in the Non-AFFF Suit were plausibly attributable at least in part to MilSpec AFFF. And once it became apparent that "contamination of [any] of the at-issue natural resources plausibly came from AFFF used by the military in addition to non-

---

[1] For simplicity, we refer to contamination derived from AFFF sources as "AFFF PFAS," contamination derived from non-AFFF sources as "non-AFFF PFAS," and contamination derived from AFFF that 3M produced for the government as "MilSpec AFFF PFAS."

AFFF sources," reasoned 3M, this case "relate[d] to" that AFFF, no matter that the state only sought damages for non-AFFF contamination.  3M was therefore entitled, 3M argued, to a federal forum in which it would "'rais[e] the production of MilSpec AFFF as a defense or an alternative theory' of causation."

New Hampshire moved to remand the case.  On March 29, 2023, the district court agreed that this case belongs in state court, citing two independent justifications.  See New Hampshire v. 3M Co., 665 F. Supp. 3d 215, 235 (D.N.H. 2023).  First, the removal of the Non-AFFF Suit did not comport with the federal officer removal statute.  See id.  Second, even if the removal did comport with the statute, 3M untimely sought removal.  See id.

On April 13, 3M filed a timely notice of appeal.  The next day, New Hampshire asked the district court to "execute" the remand.  The court agreed.  But it delayed the formal remand until April 26 so 3M could -- if it so chose -- file for a stay pending appeal.  3M did not do so, and the case formally returned to state court on May 2.

Before the parties filed their appellate briefs, New Hampshire filed a motion for summary disposition, arguing that this court lacked jurisdiction to hear 3M's appeal.  We denied the motion without prejudice, and New Hampshire's appellate brief reiterates the state's jurisdictional arguments.

## II.

We begin with New Hampshire's threshold contention that we lack appellate jurisdiction. New Hampshire highlights that 3M declined the district court's invitation to request a stay of the remand order. As a result, the case has formally returned to state court, leaving this court without a "formal procedural mechanism" to retrieve it. In the state's view, this case's enforced exile to state court deprives us of the ability to hear this appeal.

New Hampshire relies on our decision in Forty Six Hundred LLC v. Cadence Education, LLC, 15 F.4th 70 (1st Cir. 2021). There, we quoted precedent observing that "once a district court has decided to remand a case and has so notified the state court, the district judge is without power to take any further action." Id. at 78 (citation omitted). Hence, reasons New Hampshire, it is too late to try to undo the remand. But that quotation only concerned district courts' lack of power to revisit "cases that fall within the compass of 28 U.S.C. § 1447(d)," which bars review of certain types of remand orders. Id. This is not such a case. That same statutory provision explicitly provides that the rejection of removal under § 1442(a)(1) is subject to appellate review. See 28 U.S.C. § 1447(d).

In Forty Six Hundred, we also noted that no "formal procedural mechanism" exists to return a wrongly remanded case to federal court. 15 F.4th at 80. Nevertheless, we explicitly

affirmed our jurisdiction over an otherwise-reviewable remand order,[2] expressing our "confiden[ce]" that, should we find that the case should not have been remanded, "the district court [could] enlist the state court's cooperation and restore the action to its own docket." Id. at 79-81.  Similarly, we see no reason here to doubt that "general principles of comity, cooperation, and communication between state and federal courts" will secure the retrieval of the case if removal was proper.  Id. at 80.

Taking a different tack, New Hampshire argues that "3M has waived its right to appeal" or to request that the district court "retrieve the case from state court" by failing to seek a stay.  Forty Six Hundred did recognize the potential viability of "waiver or estoppel" arguments in this context.  Id. at 79.  But waiver generally requires actions that signify a "clear and unequivocal" intent to relinquish a specific right, including the right to a federal forum.  Northrop Grumman Tech. Servs., Inc. v. DynCorp Int'l LLC, 865 F.3d 181, 186 (4th Cir. 2017) (stating that waiver of a party's right to removal must be "clear and unequivocal"); accord Rock Hemp Corp. v. Dunn, 51 F.4th 693, 701 (7th Cir. 2022); PR Grp., LLC v. Windmill Int'l, Ltd., 792 F.3d

---

[2] Our sister circuits have also concluded that, for cases exempt from 28 U.S.C. § 1447(d)'s restrictions, "the certification of the remand order imposes no independent bar on either our jurisdiction or the district court's jurisdiction." Hammer v. HHS, 905 F.3d 517, 525 (7th Cir. 2018) (collecting cases).

1025, 1026 (8th Cir. 2015); see also United States v. Sastrom, 96 F.4th 33, 40 (1st Cir. 2024) (invoking Forty Six Hundred to suggest that a criminal defendant waived his ability to appeal the district court's order transferring his case to another court, by failing to challenge the order below or in his opening appellate brief). Here, we see no evidence that 3M clearly and unequivocally relinquished its right to appeal. So, while it may have been prudent for 3M to move to stay the remand, we see no license in the federal officer removal statute or elsewhere to condition our review on the filing of such a motion.

## III.

Having determined that we have jurisdiction to consider 3M's appeal, we turn next to the merits of 3M's challenge to the order remanding this case to state court. 3M attempted to remove this case pursuant to the federal officer removal statute, which enables removal of any "civil action . . . that is against . . . any person acting under [a federal officer] . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a). 3M contends that in this case, "[t]he existence of federal officer [removal] jurisdiction . . . turns on whether the lawsuit is 'for or relating to' MilSpec AFFF." This is also known as the nexus requirement.

3M claims that this "case relates to 3M's supply of MilSpec AFFF to the federal government because the natural

resources at issue were allegedly contaminated by PFAS from both MilSpec AFFF and non-AFFF sources." Therefore, in 3M's view, "it is clear that the alleged PFAS contamination of natural resources in this 'state-wide contamination case' will encompass and overlap with claims to recover for PFAS contamination caused at least in part by MilSpec AFFF." Simply put, in the absence of any agreement between the parties, the court in which this lawsuit is adjudicated will have to decide for at least some of the statewide resources at issue whether and to what extent MilSpec AFFF PFAS and non-AFFF PFAS have commingled. Hence, reasons 3M, this case "relates to," 28 U.S.C. § 1442(a)(1), the federal authority under which 3M produced MilSpec AFFF. 3M also argues, in defense of the timeliness of its removal, that no plaintiff's paper predating March 30, 2022 (i.e., thirty days before 3M filed its removal papers), made clear that a court would need to engage in this factfinding and thus alerted it to the case's removability.

For purposes of this opinion, we assume without deciding that 3M is correct that alleged commingling of MilSpec AFFF PFAS and non-AFFF PFAS satisfies the nexus requirement. That assumption then frames the question of timing, to which we now turn.

### IV.

We review de novo the district court's conclusion that 3M untimely removed. See Amoche v. Guarantee Tr. Life Ins. Co., 556 F.3d 41, 48 (1st Cir. 2009). In affirming the district court's

conclusion, we may rely "on any basis supported by the record," including rationales predicated "on arguments not reached by the district court or even presented to us on appeal." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 237 n.11 (1st Cir. 2013) (quoting Jordan v. DOJ, 668 F.3d 1188, 1200 (10th Cir. 2011)).

To secure a federal forum, a defendant must normally remove a civil action within thirty days of receiving the plaintiff's initial pleading in state court. See 28 U.S.C. § 1446(b)(1). But, sometimes, the initial pleading does not state a removable case. When that happens, the thirty-day clock only starts when the plaintiff provides the defendant with "a copy of an amended pleading, motion, order[,] or other paper" from which the defendant may "ascertain[]" removability. Id. § 1446(b)(3) (emphasis added); see also Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 72, 74 n.5 (1st Cir. 2014) (noting that a subsequent paper, pleading, or motion must come from the plaintiff to trigger the thirty-day clock under § 1446(b)).

To trigger the thirty-day clock, a plaintiff's "other paper" must "provide[] the defendant with sufficient information to easily determine that the matter is removable." Romulus, 770 F.3d at 72. In assessing whether a paper provides the requisite information, a defendant may not simply read that paper in isolation. Rather, the defendant must ask whether that paper, "on its face or in combination with earlier-filed pleadings, provides

- 11 -

specific and unambiguous notice that the case satisfies federal jurisdictional requirements." Id. at 74 (quoting Walker v. Trailer Transit, Inc., 727 F.3d 819, 825 (7th Cir. 2013)). And defendants must approach this inquiry with "a reasonable amount of intelligence," though they need not "perform significant investigation" to ascertain removability. Id. at 75, 80.

Here, the parties seem to agree that the complaint in this suit did not, on its own, state a case that 3M could have easily identified as removable. See id. at 76. In particular, the complaint in this case did not contain any allegations making it clear that some of the non-AFFF PFAS for which the state seeks recovery may have commingled with MilSpec AFFF PFAS. The relevant question, then, is whether any subsequent "other paper," viewed alongside preceding documents from this case, enabled 3M to "easily determine," id. at 72, that any of the contamination at issue, in 3M's words, "plausibly came from both MilSpec AFFF and non-AFFF sources" more than thirty days before it filed for removal on April 29, 2022.

The district court concluded that three different papers independently triggered the thirty-day removal clock. First, the district court pointed to the complaint in the AFFF Suit. See 3M, 665 F. Supp. 3d at 232. But 3M maintains that the AFFF complaint could not have started the removal clock because it is a paper from another case that was never introduced in this case. See

- 12 -

14C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3731 (4th ed. 2024) (collecting cases for the proposition that "documents not generated within the state litigation generally are not recognized as 'other papers,' that can start a 30-day removal period under [§] 1446(b)").

The district court also suggested that 3M's own notice of removal in the AFFF Suit could have triggered the removal clock. See 3M, 665 F. Supp. 3d at 233-34. Again, 3M counters that its AFFF notice of removal is not a paper provided by the state in this lawsuit and that the notice lacks the requisite facts to make removability obvious.

Finally, the district court concluded that New Hampshire's December 2021 disclosures in this case could have started the removal clock. See id. at 234. 3M does not question that these disclosures constitute "other paper[s]" under § 1446(b) but nevertheless argues that these disclosures did not clearly indicate potential commingling between MilSpec AFFF PFAS and non-AFFF PFAS.

We need not decide whether the district court was correct to rely on these three documents in its timeliness analysis. This is so because New Hampshire entered other papers into the record of this case, more than thirty days before 3M removed, making clear that 3M allegedly contaminated the natural resources at issue in this case with both MilSpec AFFF PFAS and non-AFFF PFAS.

On November 21, 2019, New Hampshire filed in state court a memorandum in support of an omnibus objection to motions to dismiss this case. In that memorandum, New Hampshire described its complaint in this lawsuit as "one for statewide contamination." And it explained that the "[s]tatewide contamination" for which it seeks recovery in this lawsuit "is not geographically limited" but is instead "pervasive across the natural resources of the State." This filing thus made explicit what the complaint (which underscored the "widespread contamination" of natural resources "throughout New Hampshire") only strongly implied: that New Hampshire seeks recovery in this case for statewide PFAS pollution pervasive throughout its natural resources.

Of course, New Hampshire's allegation of statewide non-AFFF PFAS did not by itself make clear that New Hampshire's non-AFFF claims would, in 3M's words, "encompass and overlap with claims to recover for PFAS contamination caused at least in part by MilSpec [AFFF]." To allege such an overlap, 3M needed to receive a paper that, when added to the other documents in this case, demonstrated that MilSpec AFFF contributed to the contamination of at least some of the statewide natural resources at issue.

New Hampshire's November 2019 memorandum largely filled that gap. In it, New Hampshire stated: "To the extent the State expressly disclaims relief related to [AFFF], the State brought a

separate lawsuit, naming the same three defendants in addition to manufacturers of AFFF, exclusively related to contamination resulting from AFFF, which is disclosed in the Complaint." New Hampshire continued: "[Defendants] are well-aware of that lawsuit, which was filed in this same court on the same day as the instant lawsuit, which suit has since been removed to federal court and transferred for pre-trial purposes to multi-district litigation pending in the District of South Carolina." Thus, as of November 21, 2019, New Hampshire had also informed 3M that 3M's AFFF had contaminated New Hampshire's natural resources and that that contamination was being litigated in an MDL in the District of South Carolina.

Subsequently, on February 21, 2020, New Hampshire filed as an exhibit in this case in state court a transcript of a discovery-update hearing from the South Carolina MDL. In relevant part, the transcript shows the parties and court discussing their efforts to conduct discovery into the issue of what 3M told "the Government and what . . . the Government kn[e]w independently" about the dangers of MilSpec AFFF. The parties further explained that "MilSpec" is short for "[m]ilitary specification" and that an official at the Naval Sea Systems Command is "responsible for, ultimately, approving all changes to the military specification." In other words, the MDL transcript -- a paper provided by New Hampshire in this case -- informed 3M that the company produced

- 15 -

per federal government specification at least some of the AFFF that New Hampshire alleges has contaminated its natural resources.

Together, these documents made clear long before March 30, 2022, that New Hampshire was alleging both that (1) this lawsuit seeks recovery from 3M for statewide non-AFFF PFAS throughout New Hampshire's natural resources, and (2) MilSpec AFFF PFAS attributable to 3M contaminated some of New Hampshire's statewide natural resources. These facts would have alerted a party exercising "a reasonable amount of intelligence," Romulus, 770 F.3d at 75, that a factfinder would need to decide whether and to what extent "certain PFAS . . . came from [MilSpec AFFF] or . . . non-AFFF products," Maryland v. 3M Co., Nos. 24-1218, 24-1270, 2025 WL 727831, at *6 (4th Cir. Mar. 7, 2025).

3M nevertheless argues that, in June 2022, New Hampshire stated, in opposing the consolidation of the Non-AFFF Suit in the South Carolina MDL, that the AFFF Suit and Non-AFFF Suit do not involve overlapping sites. But 3M never made this argument to the district court. And 3M does not explain how a statement made well after the case became clearly removable somehow retroactively belied that removability. This argument is therefore waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Separately, 3M contends that the removal clock did not begin until New Hampshire identified a specific site allegedly cross-contaminated with non-AFFF PFAS and MilSpec AFFF PFAS. But

- 16 -

the alleged presence of any commingling requires a court to determine whether and to what extent MilSpec AFFF produced by 3M caused a portion of the contamination at issue. Thus, once New Hampshire alleged facts indicating some commingling in the state, this case became plainly removable under 3M's theory of removability without any need to then identify a specific site with cross-contamination.

* * *

New Hampshire filed the MDL status hearing transcript as an exhibit in this case on February 21, 2020. When considered with New Hampshire's allegations of statewide non-AFFF contamination in its natural resources, the status hearing transcript made clear that New Hampshire was plausibly alleging that non-AFFF PFAS and MilSpec AFFF PFAS had commingled at some of the sites for which it seeks recovery in this case. Thus, assuming that the nexus requirement was satisfied once it became apparent that a court would have to adjudicate the presence and extent of MilSpec AFFF PFAS, we hold that 3M needed to file its removal notice by March 23, 2020. It did not do so until April 29, 2022. The notice was therefore untimely.

**V.**

For the foregoing reasons, the judgment of the district court is affirmed and the case should remain where the district court sent it -- in state court.